NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: August 21, 2023

S22G0905. MILLER et al. v. GOLDEN PEANUT COMPANY, LLC et al.

McMILLIAN, Justice.

This appeal, arising out of a fatal collision between a tractor-trailer driven by Lloy White and a car driven by Kristie Miller, calls on this Court to address whether the well-established test governing the admissibility of expert testimony applies with equal force to investigating law enforcement officers. For the reasons that follow, we hold that when an investigating law enforcement officer provides expert testimony, the officer is subject to the same inquiry as all witnesses who offer expert opinion testimony and, therefore, the trial court abused its discretion in failing to conduct a full, three-prong analysis under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (113 SCt 2786, 125 LE2d 469) (1993), and its progeny.

The record shows that at approximately 8:15 p.m. on September 27, 2017, after picking up a load of green peanuts from a farm in Thomas County to take to a drying facility in Camilla, White slowly made a left turn to head northbound onto a two-lane road. Kristie's vehicle, which was traveling southbound, collided with the side of the trailer. The accident resulted in Kristie's death and injuries to her minor son. Sergeant Chad Fallin of the Georgia State Patrol's Specialized Collision Reconstruction Team ("SCRT") did a walk-through of the crash site that night and was the lead investigator of a SCRT that performed a number of tests in the following weeks and ultimately issued a 102-page SCRT report.

Kristie's husband, Ross Miller, individually and as next friend and natural guardian of his minor son and the administrator of Kristie's estate, and Hayden Miller, Kristie's adult son, (collectively "Miller") filed suit against White; Golden Peanut Company, LLC ("Golden Peanut"), the owner of the trailer that White was transporting; and Archer Daniels Midland Company ("ADM"), Golden Peanut's parent company. Following discovery, Miller filed

a motion to exclude the following portion of Sergeant Fallin's SCRT report and any related testimony:

> For unknown reasons, [Kristie] did not recognize the tractor-trailer being driven by [White] entering the roadway from a private – from a private field drive. It is the opinion of this investigating officer that [Kristie] was distracted by something and failed to slow her vehicle down to allow for the trailer to clear her travel lane before the collision.

Miller argued that this testimony was unreliable because it ignored part of White's testimony and because Sergeant Fallin failed to perform nighttime testing in reaching his conclusions. Miller also sought to exclude Sergeant Fallin's opinion that, when White started pulling his truck out of the field and across the opposite lane of traffic, White had the right of way[1] on the ground that it is a legal conclusion and not a proper subject of Sergeant Fallin's testimony.[2]

The trial court denied Miller's motion to exclude, concluding

---

[1] It appears from deposition testimony that Sergeant Fallin based this opinion on his findings that White had already established his attempted lane of travel and that Kristie, who was traveling 70 miles per hour in a 55 mile-per-hour zone, had 27 seconds to avoid hitting the trailer.

[2] Miller does not raise this argument on appeal, focusing instead on Sergeant Fallin's opinion that Kristie was distracted by something prior to the accident, so we will not address this issue. See *State v. Turner*, 304 Ga. 356, 359 (1) n.6 (818 SE2d 589) (2018).

that an investigating officer is presumptively qualified as an expert, citing *Fortner v. Town of Register*, 289 Ga. App. 543, 545 (1) (657 SE2d 620) (2008), and *Jefferson Pilot Life Ins. Co. v. Clark*, 202 Ga. App. 385, 392 (3) (414 SE2d 521) (1991), and need not meet the additional evidentiary burdens as set forth in OCGA § 24-7-702 ("Rule 702") and *Daubert*. After the trial court denied Golden Peanut and ADM's motions for summary judgment, the Court of Appeals granted their application for interlocutory appeal, and Miller cross-appealed from the denial of his motion to exclude. The Court of Appeals reversed the trial court's denial of summary judgment to Golden Peanut and ADM, but affirmed the order denying the motion to exclude, relying on the trial court's reasoning and without further examining whether the trial court properly conducted the three-prong assessment established in *Daubert*. See *Golden Peanut Co., LLC v. Miller*, 363 Ga. App. 384, 390 (4) (a) (870 SE2d 511) (2022) ("[I]t has long been recognized that a police officer with investigative training and experience on automobile collisions is an expert, although of course the credibility and weight to be given his

4

testimony is for the jury.").

We granted certiorari and posed two questions:

> 1. Under what circumstances must a law enforcement officer who conducts an investigation of an accident in the course of his official duties be qualified as an expert under OCGA § 24-7-702 (b) if called to testify in a civil case resulting from the accident as both a fact witness and an expert witness? How is the portion of the testimony considered to be expert testimony to be determined?
>
> 2. If such a law enforcement officer must be qualified as an expert under OCGA § 24-7-702 (b), did the trial court properly deny the motion in limine to exclude the expert testimony and part of the officer's report in this case?

1. We begin by recognizing that, although the admissibility of lay and expert opinion testimony is clearly governed by distinct standards, "nothing . . . prevents a law enforcement officer from being qualified to provide both lay opinion and expert testimony." *Bullard v. State*, 307 Ga. 482, 492 (4) (837 SE2d 348) (2019) (citation and punctuation omitted). Thus, we must examine the difference between expert and lay testimony.

(a) Our Evidence Code establishes standards for admissibility

for both lay testimony and expert testimony. OCGA § 24-7-701

("Rule 701"), which governs the admissibility of lay witness opinion

testimony, provides:

> (a) If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences shall be limited to those opinions or inferences which are:
>
> (1) Rationally based on the perception of the witness;
> (2) Helpful to a clear understanding of the witness's testimony or the determination of a fact in issue; and
> (3) Not based on scientific, technical, or other specialized knowledge within the scope of Code Section 24-7-702.

Rule 702 (b), which governs the admissibility of expert witness

testimony, currently provides:[3]

---

[3] The current form of the statute took effect on July 1, 2022. See Ga. L. 2022, p. 201, § 1. OCGA § 24-7-702 (b) previously provided:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if:
>
> (1) The testimony is based upon sufficient facts or data;
> (2) The testimony is the product of reliable principles and methods; and
> (3) The witness has applied the principles and methods reliably to the facts of the case which have been or will be admitted

A witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise, if:

(1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(2) The testimony is based upon sufficient facts or data;

(3) The testimony is the product of reliable principles and methods; and

(4) The expert has reliably applied the principles and methods to the facts of the case.

Other authorities offer guidance in construing these provisions. As an initial matter, because our Rule 701 and Rule 702 are modeled after Rules 701 and 702 of the Federal Rules of Evidence, we look to the decisions of federal appellate courts, especially the United States Supreme Court and the Eleventh Circuit, that have construed and applied these Rules. See *Glenn v. State*, 306 Ga. 550, 555 (3) (832 SE2d 433) (2019); *Scapa Dryer*

---

into evidence before the trier of fact.

The parties have not addressed whether the 2022 amendment or the previous version of Rule 702 applies to this case, but we need not resolve this issue at this time because it does not appear that this amendment materially changes the requirements of Rule 702 and has no effect on our conclusion as to whether expert testimony from an investigating law enforcement officer is subject to *Daubert*.

*Fabrics, Inc. v. Knight*, 299 Ga. 286, 289 n.5 (788 SE2d 421) (2016). See generally *State v. Almanza*, 304 Ga. 553, 558 (2) (820 SE2d 1) (2018). The Eleventh Circuit has explained that the "prototypical example[] of the type of evidence" admissible as a lay opinion under Rule 701 relates to "the appearance of persons or things, identity, the manner of conduct, competency of a person, degrees of light or darkness, sound, size, weight, distance, and an endless number of items that cannot be described factually in words apart from inferences." *Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co.*, 320 F3d 1213, 1222 (V) (11th Cir. 2003) (citation and punctuation omitted). By contrast, expert opinion testimony has been described as a "hypothesis" based on the witness's scientific, technical, or other specialized knowledge, "[a]nd the ability to answer hypothetical questions is the essential difference between expert and lay witnesses." *United States v. Henderson*, 409 F3d 1293, 1300 (II) (3) (11th Cir. 2005) (citation and punctuation omitted).

The Advisory Committee Notes to Federal Rule 701 further

explain that, in distinguishing between lay and expert witness opinion testimony, courts should consider the witness's method of reasoning: "the distinction between lay and expert witness testimony is that lay testimony 'results from a process of reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field.'" Fed. R. Evid. 701, Advisory Committee Note. Thus, "[l]ay opinion testimony cannot provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events." *Great Lakes Ins. SE v. Wave Cruiser LLC*, 36 F4th 1346, 1358 (III) (B) (11th Cir. 2022) (citation and punctuation omitted).

As noted above, a properly disclosed and qualified expert can testify as both an expert and a fact witness. See *Travelers Property Cas. Co. of America v. Ocean Reef Charters LLC*, 71 F4th 894, 907 (II) (B) (11th Cir. 2023). But any expert opinion testimony from that witness must satisfy the conditions for admissibility. The 2000

amendment to Federal Rule 701[4] "was designed to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." Id. (citation and punctuation omitted). The Eleventh Circuit Court of Appeals recently offered a treating physician as an example: a treating physician who testifies that the plaintiff was coughing and running a fever offers lay witness testimony governed by Rule 701. See id. at 907 (II) (B) n.9. But if that same physician testifies that he diagnosed the patient as having Reactive Airways Dysfunction Syndrome caused by exposure to a toxic chemical, that testimony is based on "scientific, technical, or other specialized knowledge and must be qualified under Rule 702." Id. (citation and punctuation omitted).

Turning to the disputed testimony here, the parties agree that SCRT officers, such as Sergeant Fallin, receive specialized training

---

[4] This amendment added subsection (c) to Rule 701 (corresponding to Georgia's Rule 701 (a) (3)), which requires that a lay opinion not be "based on scientific, technical, or other specialized knowledge within the scope of Rule 702").

10

for the purpose of becoming experts in accident reconstruction. And accident reconstruction is generally a discipline requiring "knowledge, skill, experience, training, or education" within the plain language of Rule 702. See, e.g., *Griego v. State Farm Mut. Automobile Ins. Co.*, 839 F. App'x 258, 261 (II) (A) (10th Cir. 2020) (applying requirements of Rule 702 to the testimony of plaintiff's private accident reconstruction expert); *United States v. Wiggins*, 708 F. App'x 105, 109-10 (4th Cir. 2017) (applying Rule 702 requirements to federal officer testifying as to accident reconstruction); *Hanson v. Waller*, 888 F2d 806, 811 (III) (11th Cir. 1989) (applying the requirements of Rule 702 to the testimony of a law enforcement officer testifying on accident reconstruction).

In this case, Sergeant Fallin conducted multiple tests, performed an accident reconstruction, and ultimately testified that Kristie should have been able to see the truck from approximately one-half mile away; that she had 27 seconds before she reached the truck while traveling at 70 miles per hour; that nothing prevented Kristie from seeing the truck, which was lighted on the sides as well

11

as by headlights; that there were no skid marks to indicate braking by Kristie; that Kristie's vehicle left a steer mark for approximately 68 feet before the point of impact; and that Kristie must have been distracted by something to cause her to fail to slow down.[5] This conclusion is based on more than just Sergeant Fallin's own perception of the scene of the wreck as an investigating officer and necessarily involves the application of "technical or other specialized knowledge." See OCGA § 24-7-702.

(b) Having determined that the portion of Sergeant Fallin's testimony that is disputed constitutes expert testimony within the meaning of Rule 702, we must now address whether Georgia has retained the so-called "investigating officer" rule or whether the trial court should have conducted a *Daubert* analysis. Decades ago, the Court of Appeals broadly proclaimed, with little analysis, that "[t]here can be no doubt a police officer with investigative experience on automobile collisions is an expert." *Clark*, 202 Ga. App. at 392 (3).

---

[5] Sergeant Fallin testified that his investigation showed that Kristie was not using her cell phone prior to the wreck.

This holding was carried forward to one of the cases relied on by both the trial court and the Court of Appeals here. See *Fortner*, 289 Ga. App. at 545 (1) ("It has long been recognized that a police officer with investigative training and experience on automobile collisions is an expert[.] . . . Such an officer is an expert even if he is not trained to reconstruct traffic accidents." (citation and punctuation omitted)). As a result, under the investigating officer rule, the Court of Appeals has explained that it is an abuse of discretion for "a trial court to exclude the investigating officer's testimony about the cause of the accident," id., such that the trial court need not conduct a *Daubert* analysis.

However, both *Clark* and *Fortner* were decided before our current Evidence Code took effect in 2013.[6] And we have expressly held that where a provision of our current Evidence Code is materially identical to the Federal Rules of Evidence, the new provision "reflects the federal rule's meaning, displacing any other."

---

[6] See *Knight*, 299 Ga. at 288 n.4 (current Evidence Code applies in cases tried on or after January 1, 2013).

13

*Almanza*, 304 Ga. at 558 (2). In such instances, Georgia courts should not look to cases decided under the former Evidence Code because that precedent did not survive the adoption of the new Evidence Code. See id.[7] This principle is true even where, as White points out here, the new statutory language is materially identical to the former statute it replaced. See id. (concluding it is "inconsequential" that the medical treatment and diagnosis hearsay exception was substantively unchanged between the old and new Evidence Code; because the new law mirrors Federal Rule 803 (4), "it is now read as interpreted by the federal appellate courts as of the effective date of the new Code"). Therefore, where, as here, the relevant Georgia evidentiary rule is materially identical to a Federal Rule of Evidence, we no longer look to those cases decided under our former Evidence Code for guidance, turning instead to where the General Assembly clearly directed us: decisions of the Supreme

---

[7] We note, however, that where a provision of our former Evidence Code is retained in our current Code and there is no materially identical provision in the Federal Rules of Evidence, our case law interpreting that former provision still applies. See *Almanza*, 304 Ga. at 557 (2).

Court of the United States and the federal Courts of Appeals. See

Ga. L. 2011, p. 100 § 1.[8]

Rule 702, as interpreted by the Supreme Court, "imposes a special obligation upon a trial judge to ensure that any and all scientific testimony is not only relevant, but reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (II) (A) (119 SCt 1167, 143 LE2d 238) (1999) (citation and punctuation omitted). See also *Dubois v. Brantley*, 297 Ga. 575, 580 (2) (775 SE2d 512) (2015) (recognizing that Federal Rule of Evidence 702 "requires a trial court to sit as a gatekeeper and assess the reliability of proposed expert testimony, applying the principles identified in *Daubert . . .* and its progeny" (citations and punctuation omitted)). And in

---

[8] To the extent the Court of Appeals has continued to rely on cases decided under our former Evidence Code to interpret our Rule 702 with respect to expert testimony provided by investigating officers in civil cases, those cases are expressly disapproved. See, e.g., *Miller*, 363 Ga. App. at 391 (4) (c); *Clack v. Hasnat*, 354 Ga. App. 502, 505 (2) (a) (841 SE2d 210) (2020) ("It has long been recognized that a police officer with investigative training and experience on automobile collisions is an expert[.]" (quoting *Fortner*, 289 Ga. App. at 545 (1)); *Brown v. Tucker*, 337 Ga. App. 704, 706 (1) (788 SE2d 810) (2016) (citing *Fortner* for the proposition that an officer with investigative training and experience may generally offer an expert opinion about a vehicular collision).

adopting Rule 702, the General Assembly did not create a carve-out for law enforcement officers testifying as experts. See OCGA § 24-7-702 (a) (providing that, with limited exceptions not applicable here, "this Code section shall apply in *all* proceedings" (emphasis supplied)).

White argues, nonetheless, that the investigating officer rule is actually just a streamlined application of the *Daubert* standard. We are not persuaded that this is only a simple matter of semantics. "[T]he whole premise of Rule 702 is that a trial court must act as a 'gatekeeper' to ensure the relevance and reliability of expert testimony." *Dubois*, 297 Ga. at 585 (2) (citation and punctuation omitted). As the Eleventh Circuit explained, "while an expert's overwhelming qualifications may bear on the reliability of his proffered testimony, they are by no means a guarantor of reliability." *Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F3d 1333, 1341 (II) (A) (11th Cir. 2003). And, "[b]y the same token, a reliable opinion expressed by a genuinely qualified expert may not help the jury if it does not pertain to a fact at issue in the case." Id. In sum,

nothing in the language of Rule 702 supports the trial court's conclusion that an investigating officer's testimony is somehow exempted from the statute's admissibility standard or comports with White's argument that the investigating officer rule is somehow a streamlined version of *Daubert*'s clear standards. Accordingly, we conclude that when an investigating officer is called to provide an expert opinion, the trial court must perform the same gatekeeping function under Rule 702 that it is required to do with all expert witnesses.

2. Turning to our second question – whether the trial court properly admitted Sergeant Fallin's testimony and part of his report – we are mindful that the trial court has broad discretion under Rule 702 to admit or exclude expert testimony. See *Knight*, 299 Ga. at 289 ("Like most questions of admissibility, whether expert testimony ought to be admitted . . . is a question committed to the sound discretion of the trial court."). See also *General Elec. Co. v. Joiner*, 522 U.S. 136, 138 (118 SCt 512, 139 LE2d 508) (1997) (an appellate court applies an abuse of discretion standard when reviewing a trial

17

court's decision to admit or exclude expert testimony). However, based on our holding in Division 1, we conclude that the trial court abused its discretion by failing to fully exercise its gatekeeping function under Rule 702. See *Knight*, 299 Ga. at 289-90 (In determining whether expert testimony is reliable, the trial court must consider "whether the methodology by which the expert reaches his conclusions is sufficiently reliable."); *McClain v. Metabolife, Intl., Inc.*, 401 F3d 1233, 1238 (II) (11th Cir. 2005) ("A trial court . . . abuses its discretion by failing to act as a gatekeeper" to ensure the reliability of expert testimony.).

Specifically, the trial court did not consider either the reliability or helpfulness of Sergeant Fallin's testimony. Although Miller does not dispute Sergeant Fallin's qualifications as an accident-reconstruction expert, the trial court is still required to assess the remaining two prongs of the *Daubert* test: reliability and helpfulness. See *United States v. Frazier*, 387 F3d 1244, 1260 (III) (A) (11th Cir. 2004) ("While there is inevitably some overlap among the basic requirements – qualification, reliability, and helpfulness –

18

they remain distinct concepts and the courts must take care not to conflate them."). These two prongs are well-established under federal law.

Reliability requires a case-specific inquiry. See *Kumho Tire Co.*, 526 U.S. at 141. Because "[t]here are many different kinds of experts and many different kinds of expertise, . . . it follows that the test of reliability is a flexible one, the specific factors 'neither necessarily nor exclusively applying to all experts in every case.'" *HNTB Ga., Inc. v. Hamilton-King*, 287 Ga. 641, 643 (1) (697 SE2d 770) (2010) (quoting *Kumho Tire Co.*, 526 U.S. at 141). See also *Allison v. McGhan Med. Corp.*, 184 F3d 1300, 1312 (III) (C) (1) (11th Cir. 1999) (discussing four noninclusive factors courts should use as a starting point in determining reliability).

With respect to the helpfulness prong, we have explained that the proposed testimony must "logically advance[] a material aspect" of the case. *Knight*, 299 Ga. at 290 (punctuation omitted; citing *Boca Raton Community Hosp. v. Tenet Health Care Corp.*, 582 F3d 1227, 1232 (II) (11th Cir. 2009)). In other words, the testimony must "fit"

an issue that the jury is charged with deciding in order to be helpful to the jury. Id. at 291. See also *Knepfle v. J-Tech Corp.*, 48 F4th 1282, 1294 (II) (B) (11th Cir. 2022) ("[E]xpert testimony generally helps the trier of fact when the testimony concerns matters that are beyond the understanding of the average lay person" and "has a justified scientific relationship to the pertinent facts." (citations and punctuation omitted)).

Although White asks this Court to conduct this analysis on appeal, we have explained that "[a]n appellate court should not conduct the analysis of [the expert's] methodology in the first instance." *Toyo Tire North American Mfg. v. Davis*, 299 Ga. 155, 160 (2) (787 SE2d 171) (2016) ("Rule 702 imposes a special obligation upon a *trial judge* to ensure that expert testimony is relevant and reliable." (emphasis in original; citation and punctuation omitted)). Accordingly, we vacate the Court of Appeals' opinion and direct the Court of Appeals to vacate the trial court's order and remand the case for further proceedings consistent with this opinion.

*Judgment vacated and case remanded with direction. All the*

20

*Justices concur.*