**FOURTH DIVISION**
**MERCIER, C. J.,**
**DILLARD, P. J., and LAND, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**December 30, 2024**

# In the Court of Appeals of Georgia

A25A0076. WRIGHT v. THE STATE.

Dillard, Presiding Judge.

The State has charged Andrew James Wright with one count of homicide by vehicle based on driving under the influence of drugs to the extent that he was a less-safe driver ("DUI less safe") and one count of homicide by vehicle based on reckless driving. In this interlocutory appeal, Wright contends the trial court erred in granting the State's motion to exclude the testimony of his proffered expert witness under OCGA § 24-7-702 ("Rule 702"). For the following reasons, we reverse.

The record shows that on August 19, 2020, while driving a tractor trailer, Wright struck a vehicle operated by Susan Chambers—which tragically resulted in her

death. Wright's blood tested positive for various prescription drugs,[1] and he was charged as set forth above. In November 2022, Wright filed a notice of his intent to call as a defense witness an expert in pharmacology and toxicology. Almost eighteen months later, in April 2024, the State filed a motion to exclude the testimony of Wright's proposed expert.

At the subsequent hearing, Wright's proposed expert, a professor of clinical and administrative pharmacology at the University of Georgia College of Pharmacy, testified. The professor has worked at the College of Pharmacy since 1981; he has a doctorate in pharmacology and toxicology; he teaches and lectures on pharmacology and toxicology, among other subjects; and he oversees a program within the College of Pharmacy for students who have potential drug or alcohol issues. As defined by the professor, pharmacology is "the study of how drugs produce their effects[,]" including not only the methods by which drugs produce their effects and side effects, but also how "drugs are absorbed, metabolized, excreted and distributed in the body." Toxicology is similar to pharmacology but focuses on "the toxic or adverse events of

---

[1] Chambers's post-mortem blood test was positive for amphetamine and methamphetamine, but the trial court orally denied Wright's motion to admit this evidence. Although Wright filed a motion for reconsideration in March 2024, it does not appear the trial court has yet ruled on that motion.

drugs and chemicals." Prior to this case, the professor had testified as an expert in both civil and criminal cases in several states, and he was accepted as an expert in pharmacology and toxicology for purposes of the hearing in Wright's case. In addition to teaching and overseeing the student-impairment program, the professor has also done animal studies on controlled substances, including cocaine.

In reaching his opinion in this case, the professor reviewed the results of Wright's blood test, which was taken approximately four hours after the collision, as well as Wright's prescription records.[2] The professor explained that Wright tested positive for Tramadol, a non-opiate pain reliever; amphetamine; Gabapentin; Imipramine, an anti-depressant; and Desipramine, which "is actually a breakdown of metabolite from" Imipramine. Wright had prescriptions for Tramadol; amphetamine, in the form of Adderall (which is used to treat ADHD); Gabapentin; and Imipramine. Wright's blood test showed that the amount of Tramadol present was at the low end of the therapeutic range and the amount of amphetamine was actually below the therapeutic range. The other drugs were not quantified.

---

[2] Neither the result of Wright's blood test nor his prescription records are a part of the record on appeal.

When asked by defense counsel what effect, if any, the professor would expect these drugs to have on Wright at the time of the blood draw or the collision, the professor explained that because Wright had been taking these drugs for months or years, he would expect Wright to be "able to function."[3] The professor went on to state that, over many years, he has observed students taking Adderall, Tramadol, and Gabapentin, and at "very low, low therapeutic levels" (such as those found in Wright's blood), the drugs should not have "affect[ed] his ability to operate a machine." Moreover, many people taking these drugs operate vehicles and otherwise function normally; and the professor testified that if Wright had any issues with driving, his clinician would have noted it. On cross-examination, the professor explained that while he had not undertaken any human studies regarding the specific drugs found in Wright's blood and their impact on driving, he was familiar with the literature in this area, which he reviewed as a part of his academic teaching. Notably, the professor explained that this opinion was based on the specialized knowledge of his areas of expertise, including pharmacological principles.

---

[3] The professor admitted that these drugs—in high doses or when newly prescribed—could impair a person's ability to operate a vehicle safely.

Following that hearing, the trial court granted the State's motion to exclude the testimony of the professor. Wright thereafter filed an application for interlocutory review to this Court, which we granted.[4] This appeal follows.

Before we turn to Wright's claim of error, some historical context and general review may be helpful. Effective July 1, 2022, the General Assembly repealed the former statute which specifically governed the admission of expert testimony in criminal cases,[5] and amended Rule 702 such that it "now governs the admissibility of expert testimony in criminal as well as civil cases."[6] And with this amendment, the General Assembly "extended to criminal cases the federal standard of admissibility

---

[4] *See* Order, Case No. A24I0250 (Ga. App. July 17, 2024).

[5] *See* OCGA § 24-7-707 (2022) ("In criminal proceedings, the opinions of experts on any question of science, skill, trade, or like questions shall always be admissible; and such opinions may be given on the facts as proved by other witnesses."); 2022 Ga. Laws, p. 201, § 2 (repealing former OCGA § 24-7-707).

[6] *Wilson v. State*, 370 Ga. App. 399, 406 (2) (897 SE2d 597) (2024); *see* OCGA § 24-7-702 (a) ("[T]he provisions of this Code section shall apply in all proceedings."); 2022 Ga. Laws, p. 201, §§ 1 (amending OCGA § 24-7-702), 3 (noting effective date).

5

of expert testimony" articulated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*[7] and its progeny.[8]

The amended version of Rule 702 (b) provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise, if:

(1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(2) The testimony is based upon sufficient facts or data;

(3) The testimony is the product of reliable principles and methods; and

(4) The expert has reliably applied the principles and methods to the facts of the case.[9]

---

[7] 509 U.S. 579 (113 SCt 2786, 125 LE2d 469) (1993).

[8] *Garrison v. State*, 319 Ga. 711, 725 (3) (b) (905 SE2d 629) (2024) (punctuation omitted); *accord Wilson*, 370 Ga. App. at 407 (2).

[9] OCGA § 24-7-702 (b).

Because Georgia's Rule 702 is modeled after Rule 702 of the Federal Rules of Evidence, "we look to the decisions of federal appellate courts, especially the United States Supreme Court and the Eleventh Circuit" for guidance.[10]

In determining whether an expert's testimony is admissible under *Daubert*, the trial court acts as "a gatekeeper, assessing both the witness' qualifications to testify in a particular area of expertise and the relevancy and reliability of the proffered testimony."[11] The purpose of *Daubert*'s gate-keeping requirement is to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that

---

[10] *Miller v. Golden Peanut Co., LLC*, 317 Ga. 22, 26 (1) (a) (891 SE2d 776) (2023). Georgia's current Evidence Code took effect in 2013. *Id.* at 28 (1) (b). And when, as here, the "relevant Georgia evidentiary rule is materially identical to a Federal Rule of Evidence, we no longer look to those cases decided under our former Evidence Code for guidance, turning instead to where the General Assembly clearly directed us: decisions of the Supreme Court of the United States and the federal Courts of Appeals." *Id.* at 28-29 (1) (b).

[11] *Garrison*, 319 Ga. at 726 (3) (c) (i) (punctuation omitted); *see Miller*, 317 Ga. at 29 (1) (b) ("The whole premise of Rule 702 is that a trial court must act as a 'gatekeeper' to ensure the relevance and reliability of expert testimony." (punctuation omitted)).

characterizes the practice of an expert in the relevant field."[12] And reliability requires "a case-specific inquiry."[13]

Importantly, in making its assessment, the trial court "may not exclude an otherwise sufficient expert opinion simply because it believes that the opinion is not—in its view—particularly strong or persuasive."[14] Rather, the weight to be given to "admissible expert testimony is a matter for the jury."[15] Ultimately, courts must

[12] *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (II) (B) (119 SCt 1167, 143 LE2d 238) (1999); *see Smith v. Ford Motor Co.*, 215 F3d 713, 718 (II) (A) (7th Cir. 2000) (Flaum, J.) ("[A] court should consider a proposed expert's full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area.").

[13] *Miller*, 317 Ga. at 30 (2); *see id.* ("Because there are many different kinds of experts and many different kinds of expertise, it follows that the test of reliability is a flexible one[.]" (punctuation omitted)).

[14] *Emory University v. Willcox*, 355 Ga. App. 542, 543 (1) (844 SE2d 889) (2020) (punctuation omitted); *accord Fireman's Fund Ins. Co. v. Holder Constr. Grp., LLC*, 362 Ga. App. 367, 372 (1) (868 SE2d 485) (2022); *see Rosenfeld v. Oceania Cruises, Inc.*, 654 F3d 1190, 1193 (11th Cir. 2011) (explaining that it is not the role of the trial court "to make ultimate conclusions as to the persuasiveness of the proffered evidence" and that "in most cases, objections to the inadequacies of a study are more appropriately considered an objection going to the weight of the evidence rather than its admissibility" (punctuation omitted)).

[15] *Willcox*, 355 Ga. App. at 543 (1) (punctuation omitted); *see Ambrosini v. Labarraque*, 101 F3d 129, 134 (II) (DC Cir. 1996) ("[O]nce an expert has explained his or her methodology, and has withstood cross-examination or evidence suggesting that the methodology is not derived from the scientific method, the expert's testimony, so

remain cautious not to "improperly use the admissibility criteria to supplant"[16] the

sacrosanct right to a jury trial[17] because "[v]igorous cross-examination, presentation

of contrary evidence, and careful instruction on the burden of proof are the traditional

and appropriate means of attacking shaky but admissible evidence."[18]

When applying Rule 702, the trial court has "broad discretion" to accept or

reject "the qualifications of an expert witness, and we review a trial court's ruling on

both the qualification of an expert and the admissibility of that expert's testimony for

long as it 'fits' an issue in the case, is admissible under Rule 702 for the trier of fact
to weigh.").

[16] *Moore v. Intuitive Surgical, Inc.*, 995 F3d 839, 850 (III) (11th Cir. 2021).

[17] *See* Ga. Const. Art. I, Sec. I, Para. XI (a) (providing that the right to a jury trial
"shall remain inviolate"); *see also* U.S. Const. amend. VI ("In all criminal
prosecutions, the accused shall enjoy the right to a speedy and public trial, by an
impartial jury of the State and district wherein the crime shall have been committed
. . ."); *Ramos v. Louisiana*, 590 U.S. 83, 93 (I) (140 SCt 1390, 206 LEd2d 583) (2020)
(Gorsuch, J.) ("[T]he Sixth Amendment right to a jury trial is 'fundamental to the
American scheme of justice[.]'"); *Duncan v. Louisiana*, 391 U.S. 145, 155 (I) (88 SCt
1444, 20 LE2d 491 (1968) (White, J.) ("A right to jury trial is granted to criminal
defendants in order to prevent oppression by the Government."). *See generally Sec. &
Exch. Comm'n v. Jarkesy*, ___ U.S. ___ (II) (A) (1) (144 SCt 2117, 2128, 219 LEd2d
650) (2024) (Roberts, C.J.) (noting that "[t]he right to trial by jury is 'of such
importance and occupies so firm a place in our history and jurisprudence that any
seeming curtailment of the right' has always been and 'should be scrutinized with the
utmost care'") (citation omitted)).

[18] *Daubert*, 509 U.S. at 596 (III); *accord Willcox*, 355 Ga. App. at 544 (1).

an abuse of discretion."[19] Finally, as the party seeking to rely on the proffered expert, Wright bore the burden of establishing that the professor's testimony was reliable within the meaning of Rule 702.[20]

With the foregoing guiding principles in mind, we will now address the merits of Wright's particular claim of error. Specifically, he maintains the trial court improperly considered the persuasiveness or weight of the proffered expert testimony and, in doing so, failed to act as a "gatekeeper" and abused its discretion. We agree.

In making its ruling, the trial court concluded that the professor "otherwise" qualified as an expert in toxicology and pharmacology based on his training and experience. Even so, the trial court determined that the professor's proposed testimony "would not be sufficiently reliable so as to help the trier of fact" as required

---

[19] *Wilson*, 370 Ga. App. at 407 (2) (punctuation omitted); *see Miller*, 317 Ga. at 30 (2) ("[T]he trial court has broad discretion under Rule 702 to admit or exclude expert testimony."); Ronald L. Carlson & Michael Scott Carlson, CARLSON ON EVIDENCE 385 (8th ed. 2023) ("While the trial court has authority to exclude expert testimony, it must exercise it carefully.").

[20] *Fireman's Fund Ins.*, 362 Ga. App. at 371 (1); *see Preferred Women's Healthcare LLC v. Sain*, 367 Ga. App. 821, 826 (1) (888 SE2d 599) (2023) ("Importantly, the proponent of the testimony does not have the burden of proving that it is scientifically correct, but only that by a preponderance of the evidence, it is reliable." (punctuation omitted)); *U.S. v. Esformes*, 60 F4th 621, 637 (III) (D) (11th Cir. 2023) (Pryor, C.J.) (same).

under Rule 702 (b) (1) because the professor had "not engaged in any studies, field tests or direct evaluations concerning the effects of drugs on the ability of a human being to operate a motor vehicle safely." And because the professor could not testify to the "direct result . . . of drugs on a human being's ability to operate a motor vehicle safely," the court found that he had not reliably applied principles and methods to the facts of this case as required under Rule 702 (b) (4).

In this case, Wright is charged with, *inter alia*, homicide by vehicle based on DUI less safe.[21] In order to convict Wright of this charge, the State is required to prove that he drove a vehicle while "[u]nder the influence of any drug to the extent that it [was] less safe" for him to drive.[22] As a result, contrary to the trial court's finding, the professor's specialized knowledge of pharmacology and toxicology would help the trier of fact determine an important fact at issue: whether Wright was a less-safe driver

---

[21] OCGA § 40-6-393 (a) ("Any person who, without malice aforethought, causes the death of another person through the violation" of various Code sections, including driving under the influence in violation of OCGA § 40-6-391, "commits the offense of homicide by vehicle[.]").

[22] OCGA § 40-6-391 (a) (2) ("A person shall not drive or be in actual physical control of any moving vehicle while . . . [u]nder the influence of any drug to the extent that it is less safe for the person to drive[.]").

as a result of his prescription medications.[23] And while the trial court specifically found the professor's testimony would not be helpful because it lacked reliability (in that the professor had not engaged in any human studies, field testing, or direct observation of drivers), the factual basis of an expert opinion "goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination."[24] Moreover, while there is "inevitably some overlap among the basic requirements—qualification, reliability, and

---

[23] *See* Rule 702 (b) (1) (setting forth the requirement that the "expert's scientific, technical, or other specialized knowledge . . . help the trier of fact to understand the evidence or to determine a fact in issue"); *Miller*, 317 Ga. at 30 (2) ("[T]he proposed testimony must logically advance a material aspect of the case." (punctuation omitted)); *Cordial Endeavor Concessions of Atlanta, LLC v. Gebo Law LLC*, 370 Ga. App. 528, 530 (2) (898 SE2d 259)(2024) ("Expert testimony is helpful to the trier of fact only to the extent that the testimony is relevant to the task at hand and logically advances a material aspect of the case." (punctuation omitted)).

[24] *Willcox*, 355 Ga. App. at 545 (2); *see Smith*, 215 F3d at 718 (II) (A) ("The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact[.]"); *U.S. v. L.E. Cooke Co., Inc.*, 991 F2d 336, 342 (II) (A) (6th Cir. 1993) (Milburn, J.) ("The Federal Rules of Evidence allow an expert great liberty in determining the basis of his opinions and whether an expert opinion should be accepted as having an adequate basis is a matter for the trier of fact to decide."). *See also* CARLSON, *supra* note 19, pp. 392-93 ("Is it only the writings of the expert who is called to the stand which count? The answer to this inquiry is 'no.' The supportive writing can come from other authors in the professional field, as well as from the expert on the stand.").

helpfulness—they remain distinct concepts and the courts must take care not to conflate them."[25] Here, the trial court appears to have conflated helpfulness and reliability.[26]

As to whether the professor reliably applied pharmacological principles and methods to the facts of this case within the meaning of Rule 702 (b) (4), the trial court found the professor had not reliably applied these principles because he could not testify directly as to the impact of drugs on a human's ability to drive. In reaching his opinion, the professor reviewed the results of Wright's blood test, which included the levels of various medications present, as well as Wright's prescription history. And the professor testified that, in his opinion, based on the evidence he considered, as well as his knowledge of pharmacology (including his review of the literature, and his personal experience with people taking the same drugs Wright was taking), Wright would have been able to function normally, including driving. Ultimately, the trial court "may not exclude an otherwise sufficient expert opinion simply because it

---

[25] *Frazier*, 387 F3d at 1260 (III) (A); *accord Willcox*, 355 Ga. App. at 543 (1).

[26] *See supra* note 25 & accompanying text.

believes that the opinion is not—in its view—particularly strong or persuasive."[27] Instead, the weight to be given to "admissible expert testimony is a matter for the jury."[28] But here, the trial court excluded the professor's proposed testimony because it found that the testimony was not particularly strong or persuasive.[29] In doing so, the court abused its discretion.[30]

---

[27] *Willcox*, 355 Ga. App. at 543 (1) (punctuation omitted); *accord Fireman's Fund Ins.*, 362 Ga. App. at 372 (1). Notably, as set forth above, the trial court conceded that the professor "otherwise" qualified as an expert.

[28] *Willcox*, 355 Ga. App. at 543 (1) (punctuation omitted); *see Gayton v. McCoy*, 593 F3d 610, 619 (II) (A) (7th Cir. 2010) (Williams, J.) (explaining that "[a]fter hearing from all of the experts, and after vigorous cross-examination, it will be up to the jury to determine" which factors, if any, caused the injury in question). In its response brief, the State contends the professor's testimony was unreliable because the blood draw was several hours after the collision. But the timing of the blood draw also goes to the weight of the expert's testimony.

[29] *See supra* note 14 & accompanying text.

[30] *See, e.g.*, *Fireman's Fund Ins.*, 362 Ga. App. at 373 (1) (a) (holding trial court abused its discretion in excluding "an otherwise sufficient expert opinion based on its belief that the opinion was not particularly strong or persuasive"); *Rosenfeld*, 654 F3d at 1194 (granting new trial when trial court excluded plaintiff's proposed expert on flooring; flooring expert's knowledge was beyond the understanding of the average citizen; and defendant's arguments that expert's methods were "imprecise and unspecific and based on incorrect assumptions" went to the weight and persuasiveness of expert's testimony, not its admissibility (punctuation omitted)); *Gayton*, 593 F3d at 618 (II) (A) (holding district court abused its discretion in finding expert's testimony unreliable; expert relied on the same record, including decedent's medical records, as other experts and provided a sufficient scientific basis for his

For all these reasons, we reverse the trial court's ruling and remand the case for further proceedings consistent with this opinion.

*Judgment reversed. Mercier, C. J., and Land, J., concur.*

---

opinion); *see also Willcox*, 355 Ga. App. at 545-46 (2) (concluding trial court did not abuse its discretion in denying defendants' motion to exclude expert's opinion evidence even if, as the defendants argued, the opinion was "based upon inadequate knowledge").

15