**SECOND DIVISION
BARNES, P. J.,
ADAMS and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**May 17, 2012**

# In the Court of Appeals of Georgia

A12A0743. THORPE et al. v. STERLING EQUIPMENT COMPANY, INC. et al.

MCFADDEN, Judge

This appeal is from a grant of summary judgment to the defendants in an action arising out of the death of the driver of a logging truck. Leon Maxwell was killed when his truck stopped, and the cut timber he was hauling lurched forward, crushing the cab. The plaintiffs argue that Sterling Equipment Co., Inc., which leased the truck to Maxwell's employer, owed Maxwell a duty to inspect the truck to ensure that it was safe before delivering it and that John Lane, Sterling Equipment's principal, can be held liable for any torts he may have committed. They also argue that the trial court erred by making factual findings on disputed evidence.

We disagree with the plaintiffs' argument that the defendants owed Maxwell a duty to inspect the truck and to ensure that it was safe under Restatement 2d of Torts, § 388 because that provision imposes a duty to warn, not to inspect or to ensure a chattel's safety. We agree with the plaintiffs, however, that the defendants owed Maxwell a duty arising from the bailor-bailee relationship between Sterling Equipment and Coastal Logging, Inc., Maxwell's employer. We also agree with the plaintiffs that Lane can be held personally liable for any negligent acts in which he may have participated and that there is some evidence to support such a claim. And we agree with the plaintiffs that the trial court erred by making certain factual findings since the evidence was not undisputed. We therefore reverse the summary judgment granted to the defendants.

Lane owns both Sterling Equipment and Coastal Logging. Sterling Equipment is in the business of buying trucks for resale; it leases the trucks to Coastal Logging until they sell. Lane purchased for Sterling Equipment the truck involved in the accident. Before buying the truck, Lane inspected it by "[j]ust a general walk around, cranked it up, checked the oil pressure, things such as that." The truck was equipped with a cab guard or "headache rack," a device installed to protect the truck's cab from

2

being crushed by the load in the trailer. Lane visually inspected the truck's headache rack.

Maxwell's children and the administrators of his estate filed this action against Sterling Equipment and Lane, alleging that they breached a duty to inspect, repair and maintain the truck, and to ensure that the truck lacked defects. The defendants moved for summary judgment, arguing that they owed no duty to Maxwell and that Lane, a corporate officer, could not be held personally liable. The trial court granted the motion, and the plaintiffs appealed.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). To obtain summary judgment, a defendant need not produce any evidence, but must only point to an absence of evidence supporting at least one essential element of the plaintiff's claim. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). "Our review of a grant of summary judgment is de novo, and we view the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmovant." (Citation omitted.) *Cope v. Enterprise Rent-A-Car*, 250 Ga. App. 648, 649 (551 SE2d 841) (2001).

The essential elements of a cause of action based on negligence are:

3

(1) A legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and, (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty.

(Citation omitted.) Id.

1.      The plaintiffs argue that some of the trial court's factual findings were unsupported or the subject of disputed evidence. In its order granting summary judgment to the defendants, the trial court found, among other things, that:

the alleged hazard was present only if the truck was loaded with cut logs, to a level that was equal to or higher than the height of the cab;

[t]he alleged hazard would not be present if the wood products the truck was expected to be hauling were stumps or some other type of forest product besides cut log;

[a lessor of a log truck] has no control over the types of wood products that will be hauled or, if cut logs are hauled, how high those logs will be loaded on the trailer; and,

[o]nly the lessee is aware of whether the truck will be used to haul cut logs loaded to a height that posed a risk of "load shifting" which might cause them to penetrate the cab in an emergency situation such as what

4

the decedent experienced, or whether it would be used for other purposes which did not pose that risk.

The defendants do not argue that these factual findings are based on undisputed evidence. Rather, they argue that the trial court's error in making such findings does not entitle the plaintiffs to reversal because the findings were merely dicta. But dicta is "a statement in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand." *Zepp v. Brannen*, 283 Ga. 395, 397 (658 SE2d 567) (2008). The trial court's factual findings, which were not based on undisputed evidence, were not dicta, and the trial court erred in making them. "In ruling on a motion for summary judgment, a trial court is not empowered to resolve disputed issues of material fact but merely to determine if such issues exist for resolution." (Citation omitted.) *Atlanta v. North by Northwest Civic Assn.*, 262 Ga. 531, 537 (4) (422 SE2d 651) (1992). The trial court erred in making these factual findings on summary judgment, given that, at best, the evidence was disputed.

2. The plaintiffs argue that the trial court erred in finding that Sterling Equipment owed Maxwell no duty. We disagree with their argument that the defendants owed Maxwell a duty to inspect the truck and headache rack and ensure

their safety under Restatement 2d of Torts, § 388 because that provision imposes a duty to warn, not to inspect or to ensure safety. We agree with the plaintiffs, however, that the defendants owed Maxwell a duty arising from the bailor-bailee relationship between Sterling Equipment and Coastal Logging.

(a) The plaintiffs argue that Sterling Equipment owed Maxwell a duty under Restatement 2d of Torts, § 388, which this court adopted in *Moody v. Martin Motor Co.*, 76 Ga. App. 456 (46 SE2d 197) (1948). See *Carter v. E. I. DuPont de Nemours & Co.*, 217 Ga. App. 139 (456 SE2d 661) (1995). Section 388 provides:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
>
> > (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
> >
> > (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

6

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

This has been interpreted as imposing "liability for damages caused by suppliers of chattel who fail to use reasonable care to inform likely users of the chattel's dangerous conditions." (Citation omitted.) *Binder v. Jones & Laughlin Steel Corp.*, 520 A2d 863, 866 (II) (Pa. Super. 1987). See also Restatement 2d of Torts, § 388, comment g ("The duty which the rule stated in this Section imposes upon the supplier of a chattel for another's use is *to exercise reasonable care to give to those who are to use the chattel the information which the supplier possesses*, and which he should realize to be necessary to make its use safe for them and those in whose vicinity it is to be used.") (emphasis supplied). Simply put, § 388 imposes a duty to warn. See, e.g., *Fluidmaster v. Severinsen*, 238 Ga. App. 755, 756 (520 SE2d 253) (1999) (physical precedent only)*; Carter*, 217 Ga. App. at 141-142; *Beam v. Omark Indus.*, 143 Ga. App. 142, 147 (237 SE2d 607) (1977).

But the plaintiffs do not allege that Maxwell's death was caused by the breach of a duty to warn him of the truck's dangerous condition. Rather, they allege that Maxwell's death was caused by the breach of a duty to inspect, repair and maintain

the truck. They cite no authority for the proposition that § 388 imposes a duty to inspect, repair and maintain a chattel. Indeed, comment m to § 388 expressly states that "[t]he fact that a chattel is supplied for the use of others does not of itself impose upon the supplier a duty to make an inspection of the chattel, no matter how cursory, in order to discover whether it is fit for the use for which it is supplied." See *Lockett v. Gen. Elec. Co.*, 376 F. Supp. 1201, 1208 (E.D. Pa. 1974) ("[A] supplier of a chattel has no duty under § 388 to test or inspect or even make a cursory examination to ascertain the existence or non-existence of a dangerous condition.").

The plaintiffs heavily rely on *Moody*, 76 Ga. App. 456, to find a duty to inspect based on § 388. But *Moody* is distinguishable. In *Moody*, the plaintiff had given the chattel to the defendant for the defendant to make repairs to an identified condition; the defendant then misrepresented that the repairs had been made, thus failing to disclose to the plaintiff the chattel's likely dangerous condition. Id. at 457. Such an allegation implicated § 388's duty to warn. See Restatement 2d of Torts, § 388, comment b (a supplier of a chattel "is subject to liability if by word or deed he leads those who are to use the chattel to believe it to be of a character or in a condition safer for use than he knows it to be or to be likely to be"). Here, however, the plaintiffs do not allege that Maxwell's death resulted from the breach of a duty to warn.

(b)     The plaintiffs argue that the defendants owed Maxwell a duty arising from the bailor-bailee relationship between Sterling Equipment and Coastal Logging. We agree.

> [A] bailor, entrusting a chattel to a bailee for immediate operation, has a duty of using ordinary care to ascertain that the chattel has no hidden defects rendering it dangerous, and . . . this duty extends to those persons within the range of foreseeable operation of the chattel. Since the bailor's duty extends to persons other than the parties to the actual bailment contract, the limits of the bailor's liability are not to be determined alone by the provisions and warranties of the contract of bailment, but also by the limits imposed by the doctrine of proximate cause, that is, whether the defendant . . . should have foreseen the consequences of its alleged negligence, as a natural and probable result.

(Citation and punctuation omitted.) *Prince v. Atlanta Coca-Cola Bottling Co.*, 210 Ga. App. 108, 110 (2) (435 SE2d 482) (1993). "In general, . . . the bailor has the duty to exercise ordinary care to inspect the bailed article before delivery to ascertain if it were in a reasonably safe condition to avoid injury to another. For breach of this duty, the bailor may be liable to any person proximately injured thereby." (Citations omitted.) Adams, *Georgia Law of Torts*, § 11:2 (2011-2012 ed.).

Sterling Equipment and Lane do not deny that a bailor can owe a duty to a third party but argue that, under the terms of the lease, Coastal Logging accepted the duty,

9

superseding any such duty Sterling Equipment and Lane may have had. We recognize that it is possible for bailors and bailees to enter contracts that effect such transfers of responsibility.

> [E]ven though a bailor warrants that a chattel is free from latent defects, impliedly warrants that the chattel is sound, suitable, and fit for the purpose of the intended use, has a duty to keep the bailed property in repair for the purpose of the bailment, and should inspect the chattel before delivery to the bailee to ascertain if it is in reasonably safe condition to avoid injury to another -- particularly where the chattel is of a type which could be dangerous to life, limb, or property -- the parties are free to contract and may by express agreement enlarge, abridge, qualify, or supersede obligations that otherwise would arise from the bailment by implication of law -- so long as the contract does not violate statutory law or contravene public policy -- and, so long as such restrictions are expressed in clear and unambiguous language.

(Citations omitted.) *Hall v. Skate Escape*, 171 Ga. App. 178, 179 (319 SE2d 67) (1984). But the subject lease did not effect such a transfer. The lease between Sterling Equipment and Coastal Logging provided that Coastal Logging "accept[ed] this vehicle/trailer for consideration, full control, operations and management to operate in interstate and intrastate commerce under the established Logging operations." The defendants argue that this phrase means that Coastal Logging had the exclusive

10

responsibility to inspect and maintain the truck and trailer, and amounted to an exculpatory clause by which they relinquished their duties as bailors. But this language does not clearly and unambiguously "abridge, qualify, or supersede obligations that otherwise would arise from the bailment by implication of law," *Hall*, 171 Ga. App. at 179, and the defendants cite no authority showing otherwise.

The defendants argue that they are entitled to summary judgment because the plaintiffs waived their rights under a bailment theory since Coastal Logging could have discovered any defect through reasonable inspection. They rely on *Parker v. Loving & Co.*, 13 Ga. App. 284, 286 (79 SE 77) (1913), where we held that

> [i]f the bailee knows of the defect or in the exercise of ordinary care ought to discover it, and, notwithstanding this actual or implied knowledge, he uses the thing and injury results on account of the defect, he will be held to have waived his right to claim damages, since by the exercise of ordinary care he could have avoided the consequences of the bailor's neglect.

But *Parker* further goes on to hold that, "what amount of care the bailee ought to use to discover the defect is a question of fact for the jury." Id.

3. The plaintiffs argue that Lane can be held personally liable because he directly participated in negligent acts. "An officer of a corporation who takes part in

11

the commission of a tort by the corporation is personally liable therefor." (Citations and punctuation omitted.) *Fields Bros. Gen. Contr. v. Ruecksties*, 288 Ga. App. 674, 677 (2) (655 SE2d 282) (2007). And "one who is damaged as the result of a tort that is actually committed by a corporate agent may sue either the individual agent, seeking to establish the agent's personal liability for the damages, or the corporation, seeking to establish its vicarious liability for the torts of its agent, or the injured party can sue both." *Smith v. Hawks*, 182 Ga. App. 379, 384 (4) (355 SE2d 669) (1987).

Contrary to the defendants' position, Lane did testify that he personally inspected the truck: before buying the truck, he inspected it by "[j]ust a general walk around, cranked it up, checked the oil pressure, things such as that." Moreover, Lane testified that he was the only person who inspected the truck before Sterling Equipment bought it. Similarly, he was the only person to inspect the headache rack before Sterling Equipment decided to buy the truck, although he did not evaluate the welds or how the rack was affixed to the frame. He also testified that he purchased the truck for resale with the intent of leasing it to Coastal Logging until it was sold. This is some evidence that Lane actually committed a tort – the negligent inspection of the object of the bailment – sufficient to defeat summary judgment, and we reverse the grant of summary judgment to Lane.

*Judgment reversed. Barnes, P. J., and Adams, J., concur.*