**FOURTH DIVISION**
**DILLARD, P. J.,**
**BROWN and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 19, 2025**

# In the Court of Appeals of Georgia

A24A1576. JOHNSON v. TERMINAL INVESTMENT CORPORATION.

A24A1650. TERMINAL INVESTMENT CORPORATION v. JOHNSON.

DILLARD, Presiding Judge.

Isaiah Johnson—a longshoremen at the Georgia Ports Authority in Savannah—filed a lawsuit against Terminal Investment Corporation ("TICO"), alleging that it failed to maintain and inspect a jockey truck Johnson operated, resulting in his loss of control over the vehicle and serious injuries. TICO moved for summary judgment, which the trial court granted. In Case No. A24A1576, Johnson contends the trial court erred in (1) excluding expert-witness testimony regarding the breach of the standard of care for maintenance of the jockey truck, and (2) granting summary judgment to TICO based on the lack of any evidence that it breached such duty. And in Case No.

A24A1650, TICO cross-appeals, arguing that, in the event summary judgment is reversed, the trial court erred in not excluding all of Johnson's expert's testimony. For the following reasons, we affirm the trial court's ruling in Case No. A24A1576 and thus dismiss TICO's cross-appeal in Case No. A24A1650 as moot.

Viewed in the light most favorable to Johnson (*i.e.*, the nonmoving party),[1] the record shows that TICO manufactures, maintains, and leases terminal tractors and trailers (commonly referred to as "jockey trucks"), which are smaller versions of tractor-trailers used almost exclusively to move shipping containers around terminal ports, such as the Garden City Terminal at the Georgia Ports Authority in Savannah. Typically, the stevedore company—which is tasked with loading or unloading a cargo ship and employs the longshoreman who perform those tasks—submits a lease request for the number of jockey trucks needed for a job and retrieves the vehicles from TICO's facility on site at the port.

On May 23, 2016, Johnson—who was working as a longshoreman for Ceres Shipping at the time—went to TICO's facility at the Garden City Terminal and picked up a jockey truck that had recently been serviced. Johnson then drove to a

---

[1] *See, e.g.*, *Swanson v. Tackling*, 335 Ga. App. 810, 810 (783 SE2d 167) (2016).

2

docked ship to receive his work instructions for the day and was told to pick up a container from one berth and transport it to another. On the way there, Johnson hit a pothole in the roadway, at which point the cab of the jockey truck tilted upward, separating from the chassis. With the cab now facing downward, Johnson lost control and applied the brakes; but as he did, the truck pulled to the right, resulting in the trailer he was towing striking a cargo container situated on the side of the roadway.

Following the collision, Johnson feared that a second container stacked on top of the one he had just struck with the trailer might have become unstable from the impact and could possibly fall. So, with the cab of the jockey truck still detached and facing down, Johnson backed the vehicle away from the cargo container and then climbed out the back. Shortly thereafter, other employees arrived and reported the accident; and several minutes later, the port police and a TICO representative arrived as well. Johnson—who suffered serious injuries as a result of the collision—was then transported by ambulance to the hospital. A subsequent inspection of the jockey truck did not find any mechanical defects.

On September 30, 2021, Johnson filed a lawsuit against TICO, alleging that its failure to maintain and inspect the cab latching mechanism and the brakes of the

jockey truck Johnson was operating amounted to negligence and resulted in him losing control of the vehicle and suffering serious injuries.[2] TICO filed an answer and subsequently moved for summary judgment, arguing Johnson failed to produce any evidence of a defect in the jockey truck or that TICO had any knowledge of any defect. Johnson then successfully sought three extensions of time to file a response to TICO's motion for summary judgment and ultimately did so. And in support of his response, Johnson also filed an affidavit from a recently obtained expert witness, James Keough, a mechanical engineer with experience in the design and development of specialty trucks such as motor homes, ambulances, and terminal trucks. Specifically, Keough opined that the accident was a result of the jockey truck's cab latch and the brakes failing to function properly and that this failure could have been prevented if TICO had properly inspected and maintained the vehicle.

TICO deposed Keough and, thereafter, filed a motion to exclude his affidavit and expert testimony in its entirety, arguing that he was not qualified to offer opinions on the design, function, or maintenance of jockey trucks and his opinions were not the

---

[2] Johnson originally filed this lawsuit in 2018; and following discovery, TICO moved for summary judgment. But prior to the trial court ruling on this motion, Johnson voluntarily dismissed his complaint without prejudice in April 2021 and filed this renewal action five months later.

result of any discernible methodology. Johnson then filed a response and a second affidavit from Keough, which addressed TICO's arguments regarding his qualifications and experience. Subsequently, the trial court held a hearing, in which it heard arguments on both TICO's motion to exclude and its motion for summary judgment and then took both issues under advisement.

On January 30, 2024, the trial court issued an order partially granting and partially denying TICO's motion to exclude the testimony of Johnson's expert. Specifically, the court ruled that Keough was qualified to testify regarding the jockey truck's cab latching mechanism and to offer his opinions on how the latch could have failed mechanically, thus resulting in Johnson's accident. But the court also ruled that Keough's opinions pertaining to the jockey truck's brakes were excluded, concluding that they were summary in nature and his methodology in this regard lacked evidentiary support. Importantly, the court further ruled that Keough's qualifications and experience were insufficient to permit him to offer opinions as to whether TICO's maintenance and inspection routine for *either* the jockey truck's cab latching mechanism *or* its brakes failed to comply with the industry standard of care.

On the same day, the trial court also issued an order granting TICO's motion for summary judgment. Principally, the court ruled that TICO had met its burden of showing that it exercised ordinary care to ensure the jockey truck was in safe condition; and without Keough's testimony,[3] Johnson failed to establish a genuine issue of material fact as to whether TICO's maintenance and inspection of the vehicle failed to comply with the standard of care. Consequently, the court determined summary judgment was warranted. Johnson's appeal and TICO's cross-appeal follow.

1. In two enumerations, Johnson contends the trial court erred in (1) excluding his expert's testimony based on its finding that his qualifications were insufficient to offer opinions as to whether TICO's maintenance and inspection routine for the jockey truck's cab latch and brakes failed to comply with the industry standard of care, and (2) finding that the expert's methodology supporting his opinion on why the vehicle's brakes failed lacked evidentiary support. We disagree.

---

[3] In its order, the trial court noted that Keough's deposition was not filed and made a part of the record. Because the trial court did not consider his deposition in ruling on TICO's motion for summary judgment (relying solely on his affidavits), we similarly will not consider it. *See Parker v. Silviano*, 284 Ga. App. 278, 281 (2) (643 SE2d 819) (2007) (holding plaintiff's references to deposition testimony could not be considered on summary-judgment motion of driver's employer on claim of negligent entrustment because depositions were not filed before trial court ruled on motion).

OCGA § 24-7-702 ("Rule 702") concerns the "admissibility of opinion testimony by expert witnesses in civil cases."[4] And the standard for the admissibility of such testimony is "found in Rule 702 (b) . . . ."[5] That rule provides as follows:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if:

(1) The expert's scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(2) The testimony is based upon sufficient facts or data;

---

[4] *Dubois v. Brantley*, 297 Ga. 575, 580 (2) (775 SE2d 512) (2015). OCGA § 24-7-702 was amended in 2022 to apply to criminal as well as civil cases. *See* Ga. L. 2022, pp. 201-202, §§ 1, 4. But because TICO's motion and the trial court's ruling occurred well after the amendment, the current version of the statute, which became effective on July 1, 2022, applies here. *See* Ga. L. 2022, p. 202, § 3 ("This Act shall become effective on July 1, 2022, and shall apply to any motion made or hearing or trial commenced on or after that date."). Regardless, the amendment did not materially change the requirements under Rule 702, and so our analysis is not confined to caselaw decided after the amendment's effective date. *See Miller v. Golden Peanut Co., LLC*, 317 Ga. 22, 25 (1) n.3 (891 SE2d 776) (2023) (noting that the 2022 amendment of OCGA § 24-7-702 did not materially change the requirements for determining the admissibility of expert testimony).

[5] *Dubois*, 297 Ga. at 580 (2).

(3) The testimony is the product of reliable principles and method; and

(4) The expert has reliably applied the principles and methods to the facts of the case.[6]

Importantly, the issue of the admissibility or exclusion of expert testimony "rests in the broad discretion of the court, and consequently, the trial court's ruling thereon cannot be reversed absent an abuse of discretion."[7] Indeed, the Supreme Court of Georgia has explained that "[t]he whole premise of Rule 702 is that a trial court must act as a 'gatekeeper' to ensure the relevance and reliability of expert testimony."[8] And as a gatekeeper, the trial court "must assess both the witness's qualifications to testify in a particular area of expertise and the relevancy and reliability of the proffered

---

[6] OCGA § 24-7-702.

[7] *Cleveland v. Sentinel Ins. Co., Ltd.*, 354 Ga. App. 795, 796-97 (1) (a) (840 SE2d 738) (2020) (punctuation omitted); *accord Agri-Cycle LLC v. Couch*, 284 Ga. 90, 93 (5) (663 SE2d 175) (2008).

[8] *Dubois*, 297 Ga. at 585 (2); *see Howell v. Cochran*, 365 Ga. App. 80, 84 (a) (877 SE2d 625) (2022) ("Under Rule 702, it is the role of the trial court to act as a gatekeeper of expert testimony." (punctuation omitted)).

8

testimony."[9] Importantly, the Eleventh Circuit Court of Appeals[10] describes this assessment as a "rigorous three-part inquiry" in which the trial court considers

> whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,[11] and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. While there is inevitably some overlap among the basic requirements—qualification, reliability, and

---

[9] *Adams v. Piedmont Henry Hosp., Inc.*, 365 Ga. App. 257, 276 (2) (c) (878 SE2d 113) (2022) (punctuation omitted); *accord Toyo Tire North America Mfg. v. Davis*, 299 Ga. 155, 160-61 (2) (787 SE2d 171) (2016).

[10] Because Georgia's Rule 702 is modeled after Rule 702 of the Federal Rules of Evidence, "we look to the decisions of federal appellate courts, especially the United States Supreme Court and the Eleventh Circuit" for guidance. *Miller*, 317 Ga. at 26 (1) (a). Georgia's current Evidence Code took effect in 2013. *Id.* at 28 (1) (b). And when, as here, the "relevant Georgia evidentiary rule is materially identical to a Federal Rule of Evidence, we no longer look to those cases decided under our former Evidence Code for guidance, turning instead to where the General Assembly clearly directed us: decisions of the Supreme Court of the United States and the federal Courts of Appeals." *Id.* at 28-29 (1) (b).

[11] 509 U.S. 579 (113 SCt 2786, 125 LE2d 469) (1993).

helpfulness—they remain distinct concepts and the courts must take care not to conflate them.[12]

Furthermore, the burden of establishing the reliability of an expert's opinion "falls on the proponent, in this case, [Johnson], who [is] required to show that [his] proffered expert testimony is based upon sufficient facts or data and is the product of reliable principles and methods, which the expert applied reliably to the facts of the case."[13]

In this matter, the trial court noted that Johnson's expert, Keough, was a licensed mechanical engineer; and as his affidavit indicated, he was familiar with the design and mechanisms of jockey trucks similar to the vehicle involved in the subject accident, including the cab latching mechanism. And although the court ruled that Keough's background and experience qualified him to provide causation opinions on how the cab latching mechanism could have failed, it further ruled that nothing in Keough's background indicated that he had any experience as a mechanic or sufficient knowledge as to how TICO mechanics, or port mechanics generally, perform their

---

[12] *United States v. Frazier*, 387 F3d 1244, 1260 (III) (A) (11th Cir. 2004) (citations and punctuation omitted); *accord Nat'l Emergency Med. Servs., Inc. v. Smith*, 368 Ga. App. 18, 23 (1) (889 SE2d 162) (2023).

[13] *Adams*, 365 Ga. App. at 276 (2) (c) (punctuation omitted).

maintenance and inspection responsibilities. As a result, the court ruled that Keough was *not* qualified to offer opinions as to the standard of care required of such mechanics or that they breached such standard. In doing so, the trial court properly fulfilled its role as gatekeeper.[14]

Here, TICO submitted evidence that the subject jockey truck was inspected four days before the accident and then again on the morning of the accident, with neither inspection indicating that the vehicle was not functioning properly. Specifically, the report completed the morning before the accident indicated that the jockey truck was tested for more than two hours to ensure it was functioning properly. Additionally, TICO's corporate representative testified that the company's mechanics are regularly required to perform an 18-point inspection checklist before returning vehicles to service, which includes a check of the brakes, and that failure to do so could result in termination of employment. But rather than establishing that a recognized standard of care required TICO to do more, Keough merely opines that the cab latching mechanism and brakes should have been inspected but likely were not. As a result, Keough failed to articulate a reliable standard of care either through

---

[14] *See supra* note 9 & accompanying text.

11

his own experience or that of others in the specific profession applicable to the situation at issue. In fact, Keough did not even attempt to do so.

Of course, when engaging in a reliability analysis, courts "must be careful to focus on the expert's principles and methodology, not on the conclusions that they generate."[15] Critically, as in this case, when a witness "relies solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."[16] Indeed, if admissibility could be "established merely by the *ipse dixit* of an admittedly qualified expert, the reliability prong would be, for all practical purposes, subsumed by the qualification prong."[17] Given these circumstances, the trial court did not abuse its discretion in finding that

---

[15] *Smith*, 368 Ga. App. at 27 (1) (a) (punctuation omitted); *accord Daubert*, 509 U.S. at 595 (II) (C).

[16] *Smith*, 368 Ga. App. at 27 (1) (a) (punctuation omitted); *accord Frazier*, 387 F3d at 1261 (III) (A).

[17] *Smith*, 368 Ga. App. at 27 (1) (a) (footnote and punctuation omitted) (emphasis in original); *accord Frazier*, 387 F3d at 1261 (III) (A). *See generally General Electric Co. v. Joiner*, 522 U.S. 136, 146 (III) (118 SCt 512, 139 LE2d 508) (1997) (discussing how "*ipse dixit*" means, in essence, testimony untethered to data; that is, an assertion made but not proven).

Keough's experience was insufficient to permit him to offer reliable opinions on the standard of care required of TICO's maintenance mechanics.[18]

Additionally, when an expert's opinion is based partially on speculation, this "goes to the weight of the testimony rather than its admissibility."[19] And it is likewise true that the appropriate standard for assessing the admissibility of the opinion of an

---

[18] *See HNTB Ga., Inc. v. Hamilton-King*, 287 Ga. 641, 644-45 (2) (697 SE2d 770) (2010) (upholding trial court's exclusion of expert testimony as unreliable when expert conceded he had no experience in the design or evaluation of construction traffic control patterns about which he opined); *Smith*, 368 Ga. App. at 26-28 (1) (a) (holding plaintiff failed to establish expert's opinion testimony regarding standard of care for paramedics was the product of reliable principles and methods that had been applied reliably to facts of case, and thus denial of motion to exclude expert's opinion was an abuse of discretion); *Adams*, 365 Ga. App. at 275-78 (2) (c) (affirming trial court's ruling that epidemiologist, who was not medical doctor, was not qualified to testify regarding cause of patient's death, as such was outside the limits of his area of expertise); *Anderson v. Atlanta Gas Light Co.*, 324 Ga. App. 801, 810-12 (1) (a) (751 SE2d 589) (2013) (holding trial court did not abuse its discretion in excluding plaintiff's expert's testimony because although expert had experience in the natural gas industry, he "failed to cite any treatise or authority supporting his belief that, under readily ascertainable and verifiable standards recognized by practitioners in the field, [defendant's] actions in connection with this incident fell below the standard of care"); *Lebron v. Sec'y of Fla. Dep't of Children and Families*, 772 F3d 1352, 1367-70 (III) (A) (2) (11th Cir. 2014) (concluding district court did not abuse its discretion in finding psychiatrist was not qualified as expert to testify about degree of drug use in Florida population that applied for assistance under federal program because his background was in clinical psychiatry and the treatment of drug abuse, not social science or statistics).

[19] *Smith*, 368 Ga. App. at 28 (1) (b) (punctuation omitted).

expert is "not whether it is speculative or conjectural to some degree, but whether it is wholly so."[20] Even so, an expert "may not render an opinion that is wholly speculative or conjectural."[21] And here, in addition to Keough's lack of experience as a mechanic, he can only speculate that because the accident occurred, maintenance and an adequate inspection on the jockey truck must not have been conducted. Furthermore, as the trial court found (and as Johnson enumerates as a separate error), Keough's opinions as to how the jockey truck's brakes failed were similarly speculative, offering a conclusion—untethered to any discernible methodology—that they needed to be adjusted. So, for this reason as well, the trial court did not abuse its discretion in excluding Keough's opinions concerning the maintenance and inspections of the jockey truck's cab latch and brakes.[22]

---

[20] *Layfield v. Dep't of Transp.*, 280 Ga. 848, 850 (1) (632 SE2d 135) (2006) (punctuation omitted); *accord Smith*, 368 Ga. App. at 28-29 (1) (b).

[21] *Smith*, 368 Ga. App. at 29 (1) (b) (punctuation omitted); *see United States v. 0.161 Acres of Land*, 837 F2d 1036, 1040 (11th Cir. 1988) ("Certainly where an expert's testimony amounts to no more than a mere guess or speculation, a court should exclude his testimony.").

[22] *See Smith*, 368 Ga. App. at 28-29 (1) (b) (holding plaintiff failed to establish expert's opinion testimony regarding standard of care for paramedics was wholly speculative and unreliable, and thus, denial of motion to exclude expert's opinion was an abuse of discretion).

2. Johnson also maintains the trial court erred in granting summary judgment to TICO based on the lack of any genuine issue of material fact that it breached a duty of care. Again, we disagree.

It is, of course, well established that summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[23] Importantly, if the movant meets this burden, the nonmovant "cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue."[24] And speculation which "raises merely a conjecture or possibility is not sufficient to create even an inference of fact for consideration on summary judgment."[25] Furthermore, if summary judgment is granted, it enjoys no presumption of correctness on appeal, and

---

[23] OCGA § 9-11-56 (c); *see Swanson*, 335 Ga. App. at 811 (explaining that summary judgment is appropriate when "the moving party can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law" (punctuation omitted)).

[24] *Handberry v. Manning Forestry Servs., LLC*, 353 Ga. App. 150, 151-52 (836 SE2d 545) (2019) (punctuation omitted).

[25] *Id.* at 152 (punctuation omitted).

an appellate court must satisfy itself that the requirements of OCGA § 9-11-56 (c) have been met.[26] In conducting this *de novo* review, we are charged with "viewing the evidence, and all reasonable conclusions and inferences drawn from the evidence, in the light most favorable to the nonmovant."[27] With these guiding principles in mind, we turn now to Johnson's claims of error.

In a cause of action based on negligence (such as this one), Johnson bears the burden of establishing four essential elements:

> (1) a legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and, (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty.[28]

---

[26] *See Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010) ("Summary judgments enjoy no presumption of correctness on appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met.").

[27] *Benefield v. Tominich*, 308 Ga. App. 605, 607 (1) (708 SE2d 563) (2011) (punctuation omitted); *accord Swanson*, 335 Ga. App. at 810.

[28] *Kidd v. Metro Brokers, Inc.*, 372 Ga. App. 563, 565 (1) (905 SE2d 316) (2024) (punctuation omitted).

More specifically, in this matter, Johnson argues—and the trial court agreed—that the legal duty TICO owed to Johnson arises out of the bailor-bailee relationship between TICO and Johnson's employer. That legal doctrine provides:

> [a] bailor, entrusting a chattel to a bailee for immediate operation, has a duty of using ordinary care to ascertain that the chattel has no hidden defects rendering it dangerous, and this duty extends to those persons within the range of foreseeable operation of the chattel. Since the bailor's duty extends to persons other than the parties to the actual bailment contract, the limits of the bailor's liability are not to be determined alone by the provisions and warranties of the contract of bailment, but also by the limits imposed by the doctrine of proximate cause, that is, whether the defendant should have foreseen the consequences of its alleged negligence, as a natural and probable result.[29]

Put more succinctly, a bailor has the duty to "exercise ordinary care to inspect the bailed article before delivery to ascertain if it were in a reasonably safe condition to avoid injury to another[, and] [f]or breach of this duty, the bailor may be liable to any person proximately injured thereby."[30]

---

[29] *Thorpe v. Sterling Equip. Co., Inc.*, 315 Ga. App. 909, 913 (2) (b) (729 SE2d 52) (2012) (punctuation omitted).

[30] *Id.* at 913-14 (2) (b) (punctuation omitted); *accord* Adams, *Georgia Law of Torts*, § 11:2 (2011–2012 ed.).

Here, TICO submitted evidence that its jockey trucks were subjected to regular maintenance and specifically that the subject jockey truck was inspected four days before Johnson's accident and then again on the morning of the accident, with neither inspection indicating the vehicle was not functioning properly. In addition, the report completed the morning before the accident indicated that the jockey truck was tested for more than two hours to ensure it was functioning properly in response to a complaint it had "shut off." TICO's corporate representative also testified that the company's mechanics are regularly required to perform an 18-point inspection checklist before returning vehicles to service, which included a check of the brakes. Furthermore, a subsequent inspection of the jockey truck following the accident did not find any mechanical defects, although one month later the vehicle's brakes were adjusted.

To maintain his action, then, Johnson had to provide some evidence TICO breached a legal duty, that is "the obligation to conform to a standard of conduct under the law for the protection of others against unreasonable risks of harm."[31] But importantly,

---

[31] *Smith*, 368 Ga. App. at 30 (2) (punctuation omitted); *accord Stanley v. Garrett*, 356 Ga. App. 706, 709 (1) (848 SE2d 890) (2020).

the innocence of the plaintiff is immaterial to the existence of the legal duty on the part of the defendant in that the plaintiff will not be entitled to recover unless the defendant did something that it should not have done, i.e., an action, or failed to do something that it should have done, i.e., an omission, pursuant to the duty owed the plaintiff under the law.[32]

And here, in response to TICO's evidence, Johnson relied on Keough's expert opinions, which speculated that TICO's mechanics failed to properly conduct maintenance and inspections on the jockey truck, thus breaching a duty to comply with the standard of care. But as the trial court ruled—and as we affirmed in Division 1 *supra*—Keough was not qualified to provide such opinions regarding the standard of care. Consequently, without Keough's opinions, Johnson has "failed as a matter of law to show any breach of duty caused by a deviation from any appropriate standard of care in the situation at issue here."[33]

Nonetheless, Johnson further argues that, even if his expert's opinions were properly excluded, the standard of care with which TICO's mechanics were required to comply concerned acts of ordinary negligence that the jury can understand and

---

[32] *Smith*, 368 Ga. App. at 30 (2) (punctuation omitted); *accord Stanley*, 356 Ga. App. at 709 (1).

[33] *Smith*, 368 Ga. App. at 30 (2).

consider without the benefit of expert testimony,[34] and so summary judgment was improper. The trial court disagreed, explicitly finding in its order granting summary judgment that the standard of care owed by TICO mechanics was beyond the ken of a layperson. And Johnson's assertion to the contrary is somewhat belied by his efforts to delay his response to TICO's motion for summary judgment until he was able to retain Keough. Indeed, Johnson explicitly argued below that Keough's opinions were obtained "to assist the jury in regard to sorting out the conflicting versions of what occurred." Thus, we agree with the trial court that Johnson's allegations that TICO's mechanics failed to comply with the standard of care for inspection and maintenance of its jockey trucks involved specialized matters beyond the ken of ordinary laypersons.[35]

---

[34] *See Giannotti v. Beleza Hair Salon, Inc.*, 296 Ga. App. 636, 641 (2) (675 SE2d 544) (2009) (explaining when a factual contention is one not capable of proof only by expert testimony, it is not necessary to produce expert testimony).

[35] *See Anderson*, 324 Ga. App. at 814-15 (2) (holding that in light of nature of plaintiffs' claim that gas company defendant violated standard of care in fixing gas leak and plaintiffs' admission in the court below that expert testimony is necessary to show gas company violated standards of care, trial court did not err in ruling that the plaintiffs' allegations of negligence by gas company involved specialized matters that are beyond the ken of ordinary laypersons); *Duling v. Domino's Pizza, LLC*, 2015 WL 3407602, at *13-14 (V) (B) (4) (N.D. Ga. Jan. 14, 2015) (holding expert's testimony a commercial motor vehicle CMV driver's conduct violated industry's standard of

Finally, Johnson contends that because TICO did not keep detailed records of every inspection or maintenance on its jockey trucks, he is entitled to a rebuttable presumption that those records would have been harmful to TICO, defeating its entitlement to summary judgment.[36] Essentially, Johnson asserts that TICO engaged in spoliation.[37] But the only reference to this argument below was in Johnson's response to TICO's motion for summary judgment, when he claimed he was entitled to the adverse presumption based on the lack of records under OCGA § 24-14-22. And crucially, whether spoliation occurred is "a question of fact, to be decided by the

---

care would be helpful to jury because it concerned matters beyond the understanding of the average lay person); *Lohr v. Zehner*, 2014 WL 2832192, at *2-3 (III) (B)(M.D. Ala. June 23, 2014) (rejecting argument that opinions of trucking safety expert were not beyond the ken of lay persons, reasoning "a tractor-trailer is a significantly larger and more dangerous vehicle than an automobile and a significantly different kind of vehicle from that driven by an ordinary juror" (punctuation omitted)).

[36] *See* OCGA § 24-14-22 ("If a party has evidence in such party's power and within such party's reach by which he or she may repel a claim or charge against him or her but omits to produce it or if such party has more certain and satisfactory evidence in his or her power but relies on that which is of a weaker and inferior nature, a presumption arises that the charge or claim against such party is well founded; but this presumption may be rebutted.").

[37] *Phillips v. Harmon*, 297 Ga. 386, 393 (II) (774 SE2d 596) (2015) (explaining "spoliation" to mean "the destruction or failure to preserve evidence that is relevant to contemplated or pending litigation." (citation and punctuation omitted)).

court."[38] Indeed, the trial court must determine "whether spoliation occurred, whether the spoliator acted in bad faith, the importance of the compromised evidence, and so on."[39]

In this matter, the trial court did not explicitly rule on this issue—most likely because Johnson did not explicitly move for such a finding. But even if we assume the court's grant of TICO's motion for summary judgment implicitly rejected this assertion,[40] it did not err. Indeed, Johnson points to no evidence that TICO possessed such records and destroyed them, much less that TICO acted in bad faith. Consequently, Johnson's contention in this regard likewise lacks merit, and he certainly is not entitled to an adverse presumption sufficient to defeat summary judgment.[41]

---

[38] *Westmoreland v. Walgreen Co.*, 362 Ga. App. 119, 122 (866 SE2d 832) (2021) (punctuation omitted).

[39] *Id.* (punctuation omitted).

[40] *See Dataforensics, LLC v. Boxer Prop. Mgmt.*, 361 Ga. App. 311, 318 (1) (b) (864 SE2d 140) (2021) (explaining that "[w]ithout a ruling by the trial court on its claim of spoliation, [appellant] cannot use the unresolved issue of spoliation to assert that genuine issues of material fact nonetheless exist").

[41] *See Westmoreland*, 362 Ga. App. at 122-23 (holding plaintiff, who was allegedly injured by glass bottles falling through package and onto floor, failed to establish spoliation claim that store's failure to preserve packaging triggered rebuttable

To summarize, Johnson's allegations that TICO's mechanics failed to comply with the standard of care for the inspection and maintenance of its jockey trucks involved specialized matters beyond the ken of ordinary laypersons.[42] But without his expert's opinions (which were properly excluded), Johnson failed as a matter of law to "show any breach of duty caused by a deviation from any appropriate standard of care in the situation at issue here."[43] Nor has Johnson demonstrated that TICO engaged in spoliation of maintenance or inspection records so as to create a rebuttable presumption sufficient to overcome summary judgment.[44] Given these circumstances, the trial court did not err in granting summary judgment in favor of TICO.[45]

---

presumption that packaging would have been harmful to store's case given that plaintiff submitted no evidence that store destroyed packaging); *Kelley v. Blue Line Carriers, LLC*, 300 Ga. App. 577, 579-80 (1) (685 SE2d 479) (2009) (affirming grant of summary for defendant given plaintiff failed to obtain ruling from trial court on issue of whether defendant engaged in spoliation of important records).

[42] *See supra* note 35 & accompanying text.

[43] *Smith*, 368 Ga. App. at 30 (2).

[44] *See supra* note 40 & accompanying text.

[45] *Smith*, 368 Ga. App. at 30-31 (2) (holding that because plaintiff's expert's opinions on industry standard of care were inadmissible, plaintiff could not show a breach of said duty and, thus, summary judgment for defendant was warranted); *Smith v. CSX Transp., Inc.*, 343 Ga. App. 508, 516-17 (2) (806 SE2d 890) (2017) (concluding that because plaintiff had no admissible medical expert testimony to support his claim

3. In Case No. A24A1650, TICO cross-appeals, arguing that the trial court erred in not excluding *all* of Johnson's expert's testimony. But given our holding that the trial court did not err in granting TICO's motion for summary judgment, TICO's cross-appeal is dismissed as moot, and we need not address it.

For all these reasons, we affirm the trial court's rulings partially excluding Johnson's expert's opinions and granting summary judgment in favor of TICO.

*Judgment affirmed in Case No. A24A1576 and appeal dismissed in Case No. A24A1650. Brown and Padgett, JJ., concur.*

---

that his employer caused his injury, the employer was entitled to summary judgment); *Anderson*, 324 Ga. App. at 814-15 (2) (affirming the trial court's ruling that, without admissible expert testimony, the plaintiffs could not prevail on their claims against gas company and therefore gas company was entitled to judgment as a matter of law on their complaints); *Brady v. Elevator Specialists, Inc.*, 287 Ga. App. 304, 308-09 (2) (653 SE2d 59) (2007) (concluding trial court erred in granting plaintiff's expert's opinion as to adequacy of the defendant's maintenance program, thus it was speculation as to whether additional maintenance would have prevented plaintiff's injury and summary judgment was warranted). We note that Johnson also contends the trial court erred in granting summary judgment on the ground that Johnson could not show that a failure to inspect the brakes was the proximate cause of the accident. But given our holding that summary judgment was properly granted because Johnson failed to show a genuine issue of fact as to whether TICO breached any applicable standard of care, we need not address this alternative holding.